Judge Lane
delivered the opinion of the court:
The deed which the complainants covenanted to deliver to the respondent could not be claimed by him until he had made full payment, which was in September, 1829. It was tendered, after demand made, in July, 1830. But between July, 1829, and September, 1830, a suit was pending, brought by Tappan against Wilson and Abraham, on the contract of sale, thus affirming it as in force, notwithstanding expressions used by him, declaring his unwillingness to accept a deed. Under these circumstances, it is not 174] perceived by the court, that either the lapse of *time, or any other obstacle of that nature, precludes the complainants from asserting their right to a specific performance.
The complainants stipulated to give such a deed as should transfer a good legal estate to the defendant. It is not indispensable, in these cases where time is not of essence, that the capacity to make a good title should exist, at the time of its stipulated performance, nor even at the time of filing the bill. It is sufficient if the title can be made good when the case is heard, or even at the master’s report. 7 Ves. 202. But the purchaser will not be compelled to take a doubtful title. 3 Bligh’s P. C. 162; 6 Madd. 159. We are therefore led to consider if a good title can be now made under the direction of this court.
The land was patented to Bruff and bequeathed to his daughter, *179 who conveyed to the complainants. This will, though proved and recorded in Maryland in 1816, was not admitted for record in this state until 1831. It has been often decided, and this course of decision was followed in the trial between these parties, at the term of October, 1831, that the title of the devisee was not complete until the record was made of this will. While it continued unrecorded, the complainants were unable to convey “a good legal” estate. Tappan could not be compelled to accept a title ; but this difficulty was removed after the trial at law, and now will not prevent the execution.
The taxes upon the land were paid by complainants during the years 1825-26; but the lands becoming afterward delinquent, were sold for the taxes of 1827-28. This tax sale is a stain upon the title, rendering it at least doubtful, and no performance will be ordered unless it is removed, or unless some fact be shown exonerating the complainants from the consequences of this imputation.
' The complainants insist the case furnishes this excuse in the position, that after a contract for a sale, equity imposes upon the purchaser the duty of paying the taxes himself, and that the incumbrance is produced by his negligence.
The parties to this contract might frame their own terms, but when they reduce it to writing, the' writing shows them. By this title bond the complainants stipulated to convey a good legal estate on June 23, 1827, on the payment of principal and interest. They now seek to multiply the conditions of the contract, and to make the conveyance of a good legal estate to depend on the payment of principal, interest, and *taxes. There is [175 nothing in the terms of the writing which creates the obligation, and we do not think the mere relation of purchaser necessarily produces this effect. Possibly, if Tappan were asking a specific performance, he might be compelled, in the account, to reimburse taxes paid by the vendor, on the principle that all the profits and all the burdens of the estate passed to him, in equity, by the contract. We give no opinion on this; but that the complainants were, in the first instance, chargeable with the payment of the tax seems plain, as they were the legal owners; and if the contract had been fully executed, the warranty in their deed would have indemnified Tappan against any such lien. The complainants themselves adopted this construction by keeping down the taxes for two years.
*180 It is for the next two years that the delinquency occurred, and the complainants insist they have become chargeable to the defendant because the time had elapsed in which the money ought to have been paid by Tappan. We can not so interpret the duties of the parties. Perhaps complainants might rescind; but if they chose to keep the contract open, they must keep themselves always ready to perform their stipulation, and on enforcing the payment of the money, they must still be able to convey the same good legal title. To maintain this ability, they must keep down the taxes and preserve the title, for the same reasons as before the time of payment, whatever may be the respective rights of the parties in taking the account.
There is another consideration which weighs much in the present case. The title has never been in a situation where a court of equity could compel Tappan to accept it. The complainants had not acquired the title fromBruff until 1831, until which time they could not enforce its specific execution, and Tappan was justified in withholding payment until this difficulty was removed. While matters remained in this situation, equity would not hold Tappan bound to advance the'taxes upon land, whose title he was at liberty to reject.
Another view may be taken of the present case, which satisfactorily shows the impropriety of extending the present relief. The complainants, in 1830, tendered a deed, containing the covenants of warranty, which is now on our files, ready to be delivered, if we require this contract to be executed. The contract of warranty contained in the deed is general in its terms, assuring the 176] title of the land to the grantee against all claims existing *at the time it takes effect, and the law will not permit its operation to be limited by any explanatory evidence. The tax claim arose in 1828, and now hangs over the title. It is, therefore, one against which the deed assumes to defend. If, then, we give complainants the relief they ask, and compel the defendant to execute this contract, and enjoin the judgment he recovered, we compel the complainants to deliver him the deed, by which he acquires a new right of action, to recover the same money contained in the judgment we enjoin.
Bill dismissed.
Judge Wood dissented; Judge Wright, having been of counsel, did not sit.